v. Hector Lopez-Monzon Okay, Ms. Keller. May it please the Court, my name is Kim Keller and I'm here today on behalf of Appellant. In this case, the Appellant has no priors, no juvenile background of criminal history, no adult background of criminal history, and has been sentenced to 290 months in prison in this secret compartment case. The element that has been challenged on appeal is guilty knowledge, whether the Appellant had knowledge of those drugs in that defective gas tank. This Court has said, and the jury was instructed in this case, that ownership alone is not enough. Ownership alone is insufficient. And the governing standard here today is the Vargas-Ocampa case. That's the case that this Court handed down en banc in 2014, where this Court abandoned the equipoise rule in circumstantial evidence cases. But I'd like to point out one element of what this Court quoted in that case. And that said, that was where this Court said, in abandoning the equipoise rule, we do not render the Jackson standard toothless. Courts remain in power to consider whether the inferences drawn by the jury were rational as opposed to being speculative and insupportable. And that's what I'm arguing. All your clients' sort of shaky or unbelievable or inconsistent stories about the ownership of the truck and all of the other facts that the government relied on. Well, Your Honor, that's the question. Like the mysterious person named Rubin, that he has no idea what the last name is or where he lives or anything about him. Well, let's go through. So talking about Rubin, what the appellant gave to the law enforcement officers when he was asked about the truck, that he readily admitted owning. And let's remember, the defendant did not, when he learned, he was in Mexico when the truck was seized. So did the defendant take off back to Guatemala, his home country, when he learned, while he was safely in Mexico, that the truck was seized? Or did he pack up his luggage, head to the customs station, come up to the law enforcement officer and say, that's my truck, I need to pick it up? Because he had some pretty valuable contraband in that truck. But if the drugs had been seized, all he's doing at that point is admitting guilt, if he has guilty knowledge. And as to Rubin, the partner that he bought the truck with, what Mr. Lopez-Manzan told law enforcement officers was that they bought the truck together, that the price of the truck was $12,500, they put money in together, and that all he knew about Rubin was that he owned a car dealership in Guatemala. His story never changed. And, Your Honor, Judge Smith, you asked about inconsistent statements that Mr. Lopez-Manzan had. I submit to this Court that Mr. Lopez-Manzan had no inconsistent statements. When the Court, when this Court handed down the Ortega-Lopez factors that this Court is supposed to consider in these guilty knowledge cases, there's a lot of factors, one of them being inconsistent statements. Well, wasn't it inconsistent when he said, when he was talking about traveling in tandem and then it was established that his passport showed that he wasn't first, whereas he had said he was first, and then he said that, oh, he just thought the previous owner left the gas tank full of 800 pounds of fuel? I mean, that's a pretty valuable commodity. I agree, Your Honor. And before I answer your question, I just want to point out procedurally the factor of inconsistent statements. When the Court looks at the case law, looking at what is an inconsistent statement, that's when the defendant says, gives the government two different stories. First he says, I was traveling here, and then he changes his story and says, no, no, I was traveling here. Mr. Lopez-Manzan never changed his story. None of his statements are inconsistent. Now, we do have the government relying on extrinsic evidence. Yes, we do have the government relying on extrinsic evidence to try to disprove Mr. Lopez-Manzan's one and only statement. That's different than saying he was saying two different things to the government, which is the factor. That's different. In United States v. Rodriguez, 1993, this Court said that it described inconsistent statements as including statements that are completely inconsistent with evidence adduced at trial. And, of course, the title to the truck and sales documents would be an example of that, not the only example. Yes, Your Honor. And I think maybe what you're saying, too, is the implausible explanation. How does he explain these documents? Well, I submit that Mr. Lopez-Manzan explained the documents very, very consistently and very rationally. What he said was, these documents show my ownership of this truck. They are from 1A Auto Truck Sales. The defendant or the government put on the stand an American business owner, the corporate secretary of A1 Auto Truck Sales. And what the government did not contradict or show any evidence to disprove was the cashier's checks. What Mr. Lopez-Manzan had in his possession was two invoices from 1A Auto Truck Sales and two cashier's checks receipts showing the money going to 1A Auto Truck Sales. That's completely consistent with his story. The government elected to bring into the courtroom a corporate secretary of A1 Auto Truck Sales, and they said, this is not our invoice. We never sold him a truck. That's consistent with what Mr. Lopez-Manzan's documents show. He didn't buy a truck from A1 Auto Truck Sales. He didn't pay money to A1 Auto Truck Sales. And so there's a variation in the invoices and the wire transfers, but no showing whatsoever by the government that those wire transfers were fraudulent and that the money wasn't indeed transferred to an American company. The Harris Bank was the one that issued the cashier's checks. No evidence saying Harris Bank never issued these cashier's checks, that these are And so when we're saying and kind of glossing over the inconsistent statement factor, the court should recognize that the government is really attempting to expand this factor, because from the very beginning to the very end, Mr. Lopez-Manzan never made an inconsistent statement. He told the story. He said, this is my truck. I was the one that was involved in driving it across. We had a trip. Judge Clement, you asked the question about whether they were driving who was in front and who was in back. Well, there was a statement made by Mr. Lopez-Manzan that he was, and I can't remember who was supposed to be first or second, but it didn't seem to corroborate the documents, the gas receipts and the passport stamp. But I submit to you, Your Honor, that as these gentlemen were driving together, the simple fact that one was in front of the other doesn't disprove Mr. Lopez-Manzan's statement that we were traveling companions. You could have very easily had two gentlemen driving together and one was a little bit ahead of the other one. And when they stopped the gas receipts, every other one of the gas receipts that were shown fit directly with his statement. When you look at the statements that Mr. Lopez-Manzan made to Agent Santiago. The purchase. Didn't he say he bought it, he bought the truck in Guatemala, Ohio or something, and the people in Ohio said they don't sell trucks? What was that scenario? So Mr. Lopez-Manzan said, I bought it. I bought it. I don't think he said where he bought it. He said, I bought it from this company, 1A Auto Truck Sales. And here are the invoices, 1A Auto Truck Sales. The government brought into the courtroom the corporate secretary of A1 Auto Truck Sales who said, we don't sell truck haulers. We didn't sell this truck. But, again, we're talking about Apple's 1A Auto Truck Sales and Orange's A1 Auto Truck Sales. There was questions. Is this a fraudulent invoice? Is he – did he make up this invoice? Did someone make up this invoice because it had the same address and same telephone number? But, again, no proof that Mr. Lopez-Manzan did this had any knowledge that this invoice was, in fact, possibly a fake invoice. And, moreover, and more importantly, how – Well, wasn't the purchaser identified as a different person and the price was different? I mean, there were just – I don't know how you can say that there were no – what did you say, that there were no inconsistent statements? Well, first of all, my argument to the Court that there's no inconsistent statements goes to let's properly define what an inconsistent statement is under the factor analysis that this Court handed down. Inconsistent statement is the defendant gave one statement to one law enforcement agent and another statement to another. But I think Judge Smith read you some authority that says your position is not valid. What I – the way I answered Judge Smith was perhaps what Judge Smith is relating is, is there an implausible explanation. That's where you tend to see extrinsic evidence being used by the government to disprove what the defendant said. But when an implausible explanation, that factor is being analyzed by this Court. What this Court is generally looking at is, how could he possibly not know that all of that marijuana was in the back of the trunk? How could he possibly not know that half of his gas tank was filled with marijuana and that he had to refuel and refuel and refuel? Here, the government is – in good faith that the story about Rubin is not implausible, that he goes out and buys this piece of equipment jointly with someone whose last name he doesn't know, and the only thing he knows about him is that he owns a car lot somewhere in Guatemala. There's nothing plausible about a story that's that shaky or that uncertain. If the Court is not convinced that Mr. López-Manzón's story about where he bought the vehicle, the Court wants to say this is absolutely implausible, this makes no sense to me, the next question for the Court is, how is that relevant to Mr. López-Manzón's guilty knowledge when he admitted all along, I am the owner of the truck? It would be one thing if there was a question as to who owned the truck. But what we're talking about, Judge Smith, right now is a possible implausible explanation on a factor that doesn't really matter, because Mr. López-Manzón admitted from the very beginning, this is my truck, I own the truck. So whether he bought it from a guy that we don't agree with, we don't like the fact that he doesn't know the guy's last name, he did give information what he had. The guy's name was Rubin and he owns car dealerships in Guatemala. He gave all the information he had. But again, how does that go to Mr. López-Manzón having guilty knowledge about the methamphetamine in the fuel tank? He readily admitted as well. The jury can decide that he's basically a liar. As long as the jury is not speculating. And what, remember, what the jury was asked to find was, did he know that what was in that fuel tank was methamphetamine as opposed to gasoline? And what Mr. López-Manzón told the jury, or he didn't testify, but what his lawyer told the jury was, he never knew that there was methamphetamine in the fuel tank. He knew it was defective when he bought it. So he knew all along and he didn't try to refill that fuel tank. He bought it. He knew it was defective. He said it was always sitting at full and even though nothing ever drained out. So what he told law enforcement officials was, this is my truck, I bought it for $7,000 and I paid $12,500 for it. Now, Judge Clement, I think you were starting to ask a question about, you know, he said he paid this amount, but the invoices showed a different amount. Well, the way that that is not proven to be an implausible explanation is he said they put in money together. So what Mr. López-Manzón said was, I paid $12,500 for it, or he said I paid $7,000 for it. The invoices showed $12,500. But if they put in money together and the two cashier's check that Mr. López-Manzón has amounts to $7,000, that makes complete sense. That's not an implausible explanation, then, because they shared the cost of the truck when they bought it. You previously said that your client didn't know that the marijuana was in the tank. This is a $3 million worth of meth. Yes. What I was talking about was when this Court can be inconsistent. It's one of the examples that when the implausible explanation factor is analyzed by this Court, traditionally it's in a situation where there's a trunk that has been altered and something big, you know, big, big amount of marijuana or something has been filled into the trunk so that the individual couldn't use the trunk as normal. Or the gas tank had been altered where a large amount of marijuana or methamphetamine had been put in there, and so the individual driving the truck couldn't use the fuel tank as normal. So that would make that an implausible explanation according to this Court in cases like that. Here, Mr. Lopez-Manzón never said, I use the fuel tank, I always use the fuel tank. He said all along, this was a defective fuel tank, I never tried to use it, so that's why he would have never known that there was methamphetamine in the tank. He said all along, this is my car, I bought this car hauler, never disavowed that statement. And so the things that the government is pointing to, to show guilty knowledge, don't show guilty knowledge. They're consistent with everything Mr. Lopez-Manzón stated. When you're trying to decide, did Mr. Lopez-Manzón have guilty knowledge, remember, he was in Mexico when the truck was seized. He comes to the U.S. border with his luggage, with all of his paperwork, to show ownership of this truck, to try to get this truck back. Is that someone that has guilty knowledge of methamphetamine in the truck? When he comes across, he stops and crosses over, he finds a law enforcement officer in a Stripes convenience store to ask him, I see my truck over there, I'm trying to get it back. Does that sound like someone with guilty knowledge of methamphetamines in the truck? And then when the Court looks at all of the testimony that was given by Agent Santiago, of all of the things that Mr. Lopez-Manzón said to him, every single one of them were corroborated by the government's investigation. All of the other gas receipts match up. All of the other passport stamps match up. The few things that the government is relying upon, we're talking about a shoestring to connect Mr. Lopez-Manzón to guilty knowledge of the methamphetamines in the truck. This is a man who has no criminal history and now is sitting in prison, 290 months, based on he paid $7,000 when he shared the costs of the truck, and his traveling companion passed one day before him from Guatemala to Mexico. Is that sufficient to sustain that kind of a conviction? Unless the Court has any other questions. Was there anything in the record to indicate the street value of the meth? $3 million. That's a pretty good reason to want to take a chance on retrieving that truck, wouldn't you say? When he knows that the truck has been detained, the truck's been caught. There is no sneaking the drugs across the border anymore. This gentleman walking up to the customs station saying, that's my truck, in my opinion, and it's the Court's decision to decide this, of course, shows lack of guilty knowledge of the truck. It seems to me that he didn't know, I don't know what the evidence shows, but I thought it was not at all clear that he knew that the drugs had been discovered. He just knew that the truck had been detained, whether his driver might have been Is there anything in the record that would show that when he went asking about it, he already knew the drugs had been discovered? No, you are correct, Your Honor. What the defendant said, or I think what the agent Santiago said, I see that I'm out of time to answer your question, Your Honor. Oh, I would like to think so. Thank you, Your Honor, of course. What agent Santiago said was he believed Mr. Lopez Manzon thought that the driver might have been drunk and believed that may be why he was detained. But again, Your Honor, we're talking about the truck is now sitting there with the United States government, with law enforcement individuals. Well, but if he's got $3 million sitting in the tank, the driver has been detained for reasons unrelated to any discovery by officials of the drugs. He comes in and says, I sent this driver, man, oh, man, I'm sorry, he was drunk, let me get my truck. It might be worth a gamble, and it's up for the jury to decide, but it doesn't seem as implausible, that story, as saying his coming forward is somehow an acknowledgment of innocence. Well, time's up. Mine was an observation, not a question, I suppose. You've saved your time for rebuttal, Ms. Keller. Thank you. Pardue. Go ahead. May it please the Court, Eric Pardue on behalf of the United States. As the jury found and as Judge Togliatti found in a lengthy opinion, denying the motion for acquittal, the motion for new trial, there is more than sufficient evidence here to affirm this conviction. I was going to start by pointing out that the reason that Mr. Lopez-Monson asked for that truck is because the evidence in the record is that he only thought that the truck had been seized because the driver, Mr. Buentelo Garcia, had been driving under the influence. So as far as him coming into the United States, I don't think there's any inference the jury can draw that he didn't, that that's a sign that he didn't know about the methamphetamines because his own statement to Agent Santiago is that he thought the driver was drunk, so that's the reason the truck had been impounded, because they had taken the driver. Any evidence as to why he thought that? No. It's just what he told Agent Santiago. So there's no evidence. The driver didn't call him? I don't, because the driver was still in custody. He was not released until later because the government was actually prosecuting. He disappeared on the scene? Correct. So there's been a lot of discussion about inconsistent statements, implausible explanations. I think there are two bigger elephants in the room that show this is a guilty knowledge, that Mr. Lopez-Monson had guilty knowledge, and I think it's important to point out that this isn't a normal hidden compartment case. Usually those cases are whenever you have a driver who is seized with the stuff and a vehicle that that driver doesn't own. Here, though, Mr. Lopez-Monson owned this truck and has controlled this truck since it was in Guatemala, and this Court has held that you can infer knowledge from that kind of control alone. Whenever Mr. Lopez-Monson and his driving partner, Mr. Rivera de Leon, came into Mexico, between that point they entered Mexico from Guatemala on December 17th or 18th. They get to the U.S. border eight or nine days later. Mr. Lopez-Monson has been in control of that truck the entire time, and that is important because we look at all these extra factors for circumstantial evidence of knowledge in secret compartment cases because there's a fair assumption that if the driver is not the owner and not in control, that there may be some party that's using this unwitting driver as part of a drug trafficking scheme. That's not the situation. Mr. Lopez-Monson bought this truck in Guatemala, has been with this truck since it got from Guatemala to the United States border. So I think that alone is a basis to infer knowledge just from his complete control over the vehicle as it traveled from Guatemala to the United States. Let me ask you a truck question. When you fill the gas tanks on a truck, do you fill one and then you fill the other, or do you fill one and it overflows into the other one so you just have one access? So my understanding is you'd have to fill one and then the other. Even if one went out, the line wouldn't connect. So say you got a hole in one, you wouldn't continue to lose all your fuel. You'd just lose that one tank. But, again, the fact that there's a broken tank here, I think, in and of itself, is enough circumstantial evidence of knowledge because the record evidence is that Mr. Lopez-Monson has been doing this come to the United States, buy cars, bring them back to Guatemala to sell for several years. He would know that having one less fuel tank on this truck, that's 800 extra pounds that you're carrying, that in itself, the 800 pounds would be the weight of fuel. Methamphetamine actually weighs a little bit more, so there's no record evidence of how much it would weigh, but it would be heavier than that. Also, there's a statement, according to Santiago, I hope you had mentioned this when I was briefly gone, quoted the defendant as saying he thought the tank was full and the fuel inside was left there by the previous owner. Is that all he said? I mean, if you're driving all the way from Guatemala, it would seem to me having twice the range would be nice if they're the same size fuel tank. Did he say anything further than that? I mean, what opposing counsel said a moment ago is that he indicated, maybe that's not in the evidence, that he knew all along that the tank was defective. Is that part of the record? So he said that he knew that that tank wasn't working and, quote, it didn't bother him. But that itself is an implausible explanation for why you would – this is over a 1,000-mile journey across the length of Mexico from Guatemala to the U.S. border. You have to stop twice as often. When you say it didn't bother him, is that what's implausible? I mean, it's one thing to say I still wanted the truck, so it didn't bother me that the tank was defective because it was a good price or something like that. That may be all that means. Well, I think where the implausibility comes in is the fact that he didn't stop along the way at any point and try to fix that. So this Court has held that there are situations where if you know you've got a defective gas tank and you're continuing to take a lengthy journey, it's almost willful ignorance or deliberate indifference to not try to fix that, to figure out what the problem is. If this really bothered him, you would think that if you've got this problem, you would either stop and fix it. There's record evidence that they stopped for repairs along the journey to Mexico. They also stopped at the Hotel Pena before they came across or gave the truck to the driver to cross the border, or they did extra repairs on the vehicle, but at no point did they stop and repair that. I think it was just a defective fuel line, so it's not like it was a major problem with the fuel tank itself. Fix that one little thing so that this continuing journey into the United States, it would be plausible that you would want to have both fuel tanks for that. So I think the fact that he knew that this fuel tank was broken, that it continued to operate with this, it's perfectly rational for a reasonable juror to infer that he knew the reason that this isn't working is because it's full of meth. It's not full of free gas. And even if it was full of free gas at some point, he could have stopped and siphoned it off into the next gas tank rather than paying for it. There's record evidence that Mr. Lopez-Montzon is the only one that would gas up the vehicle. He didn't let the other driver do that. So he's taking complete control over what goes into the gas tanks of this vehicle, which indicates that he knew that this inoperative gas tank is loaded with methamphetamines and not gas. Have you discussed the purchase of the vehicle? No, I haven't. Let me ask you about that. The evidence that you got, did anyone talking about that's not my invoice, was there any testimony that the witness that you had actually had been the seller of the Freightliner? I mean, how do we know it was the right person? Obviously, the story that your opponent has established is you got the wrong people there. No wonder they didn't recognize any of this. What do you have? Did you ever show who actually sold the Freightliner? I don't believe so, no. I don't think the record says that. I think what it points out is whether it's inconsistent statements or implausible explanation, the way Mr. Lopez-Montzon described his attainment of this vehicle coming into Mexico and into the United States, that whole process, there's just some inconsistencies or implausibilities between the documents that were found in the vehicle itself and what Mr. Lopez-Montzon told Agent Santiago. I think on top of that, in addition to both the passport stamp dates, whether they came across from Guatemala and New Mexico at the same date or on different dates, as well as the documents about the purchase price and who they purchased from, there's a lot of obfuscation by Mr. Lopez-Montzon in his discussions with Agent Santiago about the fact that there was a second tractor trailer that they brought to Hotel Pena that they planned to bring into the United States. There were some mechanical issues with the blinker that probably wouldn't have passed DOT inspection once they got into the United States, so it was left on the Mexico side. Now, it's interesting that they bring these two vehicles up here, but they both, once they get the vehicle that has the methamphetamines across the border, both cross over. Mr. Lopez-Montzon was supposed to be driving the one that stayed in Mexico, yet instead of staying with that vehicle, getting the blinker fixed, and then, say, bringing it over the next day, he proceeded to cross and go find the vehicle that had the goods, the $3 million worth of methamphetamines, which far outpaces the value of either of the trucks that cost $12,500. Well, but that part of the story at least would be consistent with his thought that the driver had been detained for intoxication, so maybe that truck effectively was sort of marooned there unless he came across to do something with it. Sure. That's correct. But he also could have, knowing that it's still there, waited and come across with it, ensured that the other truck was coming, too, and there's no indication. In fact, he never even mentioned to the agent that he had a second truck stationed in Mexico at the Hotel Peña, that staging area, before they crossed. And there's actually evidence in there by one of the witnesses, one of the other cruisadores, that said that the Mexican mafia came and picked it up a few days later, which would further show that Mr. Lopez-Montzon here has knowledge that what he's doing is part of a large drug trafficking scheme. Let me ask you about Agent Santiago's testimony about the defendant's nervousness. Did he indicate what was being said or what was being done when he observed or categorized behavior as nervousness? There's not any specificity as to at what point in the testimony. It reads more based on what Agent Santiago said. It's more like a general sense of nervousness. He would turn red occasionally while answering the question. I would not rely on just that. I think that's an additional indicia of knowledge. But that nervousness alone, this Court said, cuts both ways. But there is at least record testimony that that's one extra factor indicating that Mr. Lopez-Montzon may have had knowledge. Another one that I think there are two big indicators here. One is the broken fuel tank and the implausible explanations of why you would continue driving this vehicle with that. The other would be the value of the drugs. This Court said in Villareal that the value of the drugs themselves can be enough to show knowledge. Here, the methamphetamine in Mexico was worth $1 million. The moment it crossed the border, it would be worth $1.5 million. And then had it got all the way up to Houston, it would be worth $3 million. So this is not a small amount of controlled substance here. Judge Clement, in the Vara case I know you descended from, there the amount was only $12,000, and the Court found that that alone was not enough to indicate knowledge. Here, we are exponentially beyond that minimal amount. So at the end of the day, I know in Mr. Lopez-Montzon's brief, there were some references to the government trying to pile inference upon inference. That's not what we're doing. This case and this test is more of a totality of the circumstances. You're looking at all the circumstantial evidence to figure out whether the jury could draw a reasonable conclusion that the defendant had knowledge of the controlled substances. So it's not piling inferences upon inferences. By nature, circumstantial evidence is going to have some inferences that the jury has to draw. It's just what inferences and do those inferences support a finding of knowledge. The government would submit in this case that they do, that there's more than sufficient evidence that Mr. Lopez-Montzon knew that this truck that he owned, that he controlled, that he was bringing into the United States had well over 100 kilograms of methamphetamine in it. Unless the Court has any other questions, I'm happy to cede my time. All right. Thank you, Mr. Chief. Thank you. Mr. Keller, you've saved time for rebuttal. One of the statements made was why didn't Mr. Lopez-Montzon fix that fuel tank or drain the fuel. First, the Hendricks, the Williams-Hendricks case, which this Court handed down, where the Court blamed the defendant for not fixing the defect. That case, the defendant had a mechanic traveling with him. His son was with him and was a mechanic. This case's material are different. I don't know why he didn't fix the fuel tank. I can't tell you why. But holding it against him for not fixing it, I don't think, is sufficient to call that an implausible explanation. Additionally, I don't think there's evidence in the record to show that the amount of methamphetamine that was found in the truck traveled the entire route from Guatemala all the way, so that this extra weight that was being talked about, costing more gas to travel from Guatemala all the way to the United States, 800 gallons, 800 extra pounds. There's no evidence in the record to show that there was the weight was there. All we know is Mr. Lopez-Montzon stated, I knew it was defective all along. It didn't bother me. There was some talk about possibly being extra fuel in the tank. How much, I don't know. What happened to that extra fuel, I don't know. But there's gaps in the evidence to support that inference by the jury. And the case is materially different because there, in the Hendricks case, the defendant had a mechanic traveling with him. So this was a 3-day jury trial. And, of course, we look at the facts and the light most favorable to the verdict, which was obviously the verdict of the guilty. But I assume that in 3 days all of these various arguments were made and the jury had an opportunity to consider all of these facts and situations and make its own evaluation. Is that right? Yes, Your Honor. Yes, Your Honor. We asked the court to find today that the inferences made by the jury that Mr. Lopez-Montzon had a guilty knowledge of the methamphetamine are not supported. They're insupportable by the evidence and they're speculative. Unless the court has any further questions, I will give my time back. Thank you. The case is under submission.